UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

  -v-                                             5:13-CV-1180

$198,573.85 in U.S. CURRENCY in lieu of
Bank of America, Account Number
XXXXXXXX6421,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELITE DISTRIBUTING, LLC,

                Claimant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

HON. RICHARD S. HARTUNIAN          GWENDOLYN E. CARROLL, ESQ.
United States Attorney for the              Ass't United States Attorney
   Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261

LAW OFFICE OF H. DANA VANHEE        H. DANA VANHEE, ESQ.
Attorneys for Claimant
333 East Onondaga Street
Syracuse, NY 13202


DAVID N. HURD
United States District Judge

**DECISION and ORDER**

**I. INTRODUCTION**

Plaintiff United States of America (the "Government") brought this in rem civil forfeiture action against $198,573.85 in funds (the "defendant currency") seized from a Bank of America account held in the name of Elite Distributing, L.L.C. ("Elite Distributing" or "claimant"). The Government alleges defendant currency is subject to forfeiture pursuant to two federal statutes.[1] Claimant has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b) for lack of jurisdiction. The motion was fully briefed and decided on its submissions without oral argument.

**II. BACKGROUND**

This action arises from an ongoing Drug Enforcement Agency ("DEA") investigation into the sale and distribution of synthetic drugs[2] by Tyson Jones ("Jones"), Donnie Armstrong ("Armstrong"), AK Distributing, L.L.C. ("AK Distributing"), Elite Distributing, and other co-conspirators. Compl. ¶¶ 10, 13. The complaint alleges that Elite Distributing, a limited liability corporation opened by Jones on September 12, 2012, in Las Vegas, Nevada, is involved in this conspiracy by virtue of wire transfers and other financial activity associated with a Bank of America Account, held in claimant's name, ending in "6421" (the "Bank of

---

[1] The first statute is the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified at 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any property involved in a transaction or attempted transaction in violation of the anti-money laundering provisions of 18 U.S.C. §§ 1956 and 1957, and any property traceable to such a transaction. The second statute is 21 U.S.C. § 881(a)(6), which subjects to civil forfeiture all money or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of the Controlled Substances Act ("CSA"); all proceeds traceable to such an exchange; and all money used or intended to be used to facilitate any violation of the CSA.

[2] The Government's complaint refers to a number of different synthetic street drugs, classified as Schedule I controlled substances, that exhibit effects on the human central nervous system similar to marijuana. Compl. ¶¶ 11-12.

America Account"). Id. ¶¶ 2, 13. On September 23, 2013, a warrant for arrest in rem was issued and the Government seized defendant currency from the Bank of America Account at the bank's Utica, New York, branch. Id. ¶ 2.

### 1. Government's Investigation

In January 2013, a confidential source ("Doe") contacted DEA Special Agent Stephen Overend ("SA Overend"). Compl. ¶ 14. Doe informed Special Agent Overend that Armstrong, one of the alleged conspirators, had directed him to wire $7,200 into a Wells Fargo account ending in "7518" (the "Wells Fargo Account") in exchange for two kilograms of synthetic drugs that Armstrong agreed to ship to Doe in the Northern District of New York. Id. ¶¶ 14-15.

In February 2013, Doe contacted Armstrong to purchase additional synthetic drugs for distribution. Id. ¶ 16. Armstrong told Doe to deposit $3,600 into the Wells Fargo Account in exchange for one kilogram of synthetic drugs that Armstrong again agreed to ship to the Northern District of New York. Id. ¶ 17. Doe and SA Overend went to First Niagara National Bank in Syracuse, New York, and wired $3,600 in "official advanced funds" into Armstrong's Wells Fargo Account. Compl. ¶ 18. That afternoon, Doe telephoned Armstrong and informed him that he had transferred the money into the Wells Fargo Account as instructed. Id. Armstrong became upset and told Doe to cancel the wire transfer because he was concerned the DEA would detect the transaction. Id. ¶ 19. Doe cancelled the wire transaction before it was completed. Id. ¶ 20.

On February 26, 2013, Armstrong telephoned Doe and instructed him to come to Fort Lauderdale, Florida, to purchase a large quantity of synthetic drugs using cash. Id. ¶ 22. Doe agreed, and two days later, Doe and SA Overend met Armstrong in Fort Lauderdale to

discuss the purchase of approximately thirty kilograms of various synthetic drugs.  Id. ¶ 23.  During the negotiations, Armstrong explained that he avoided making wire transfers because he believed they could be intercepted by the DEA.  Compl. ¶ 23.  Therefore, he typically instructed his customers to deposit cash directly into several different bank accounts, including the Wells Fargo Account.  Id.

Eventually, the parties agreed to exchange $97,500 cash for thirty kilograms of synthetic drugs.  Id. ¶ 24.  Armstrong drove to a storage facility in Miami, collected two suitcases, drove to a pre-arranged location, and exchanged them with Doe and SA Overend.  Id. ¶ 25.  After this exchange was completed, law enforcement stopped both parties and seized the suitcases, which contained synthetic drugs.  Id. ¶ 26.  Based on this transaction, Armstrong pleaded guilty in the Northern District of New York to two counts of an information charging him with the intent to distribute a controlled substance analogue with the intent that it be used for human consumption.  Id. ¶ 17.

### 2. Claimant's Alleged Involvement

Following his guilty plea, Armstrong was interviewed by SA Overend and the United States Attorney's Office in Syracuse, New York.  Compl. ¶ 28.  Armstrong explained that he bought and sold synthetic drugs from Jones and his two businesses, Elite Distributing and AK Distributing.  Id.  Bank records confirmed that Armstrong had previously made a number of wire transfers from his Wells Fargo Account to an account owned by AK Distributing.  Id. ¶ 31.

On October 23, 2012, Jones opened the Bank of America Account in Elite Distributing's name.  Id. ¶ 29.  The complaint alleges that between October 26, 2012, and March 22, 2013, Elite Distributing wired nearly $500,000 to Chinese companies that supplied

merchandise used in the sale of synthetic drugs.[3]  Id. ¶ 30.  The complaint further alleges that Armstrong's bank records reveal a number of wire transfers from Elite Distributing and AK Distributing into his Wells Fargo Account.  Id. ¶ 31.  These bank records also indicate that Elite Distributing deposited thirty-five money orders into its Bank of America Account that were purchased by a company known to purchase and sell synthetic drugs.  Id. ¶ 32.  Finally, the Government alleges that a number of deposits were made into the Bank of America Account for the purchase of a specific synthetic drug known by its brand name of "AK-47."[4]  Id. ¶ 33.

## III.  DISCUSSION

Elite Distributing makes a general challenge to "jurisdiction," but specifically contends that the allegations in the complaint do not establish venue against defendant currency in the Northern District of New York.  Claimant Mem. 1.  The Government responds that venue is proper in this district because some of the acts giving rise to forfeiture occurred here.  Gov. Mem. Opp'n 4.  Claimant replies that the complaint does not allege a single act committed by Elite Distributing or Jones which occurred in this district.  Claimant Reply Mem. 1.

A motion to dismiss an in rem forfeiture action is governed by Rule 12(b) and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").  In re 650 Fifth Ave. & Related Props., 777 F. Supp. 2d 529, 541 (S.D.N.Y. 2011).  "To survive a motion to dismiss, a complaint must contain sufficient factual

---

[3] The Government's Complaint includes detailed information about each of these transactions. Compl. ¶ 30.

[4] These allegations are based on an examination of the memo portion of the checks involved in these purchases.  Compl. ¶ 33.  Each check contained a notation of either "AK" or "AK-47," which is a brand name for a type of synthetic drug.

- 5 -

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In order to survive a motion to dismiss for lack of [ ] jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006). This same standard applies to venue challenges. Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 54, 551 (E.D.N.Y. 2011). Where, as here, an evidentiary hearing has not been held, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in [plaintiff's] favor." Zaltz v. JDATE, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013) (citation omitted).

Civil forfeiture cases where the Government is a plaintiff are governed by 28 U.S.C. § 1355, which states in relevant part:

> **(a)** The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise . . .
>
> **(b)(1)** A forfeiture action or proceeding may be brought in—
>
> > **(A)** the district court for the district in which any of the acts or omissions giving rise to the forfeiture action occurred, or
> >
> > **(B)** any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
>
> **(d)** Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.

28 U.S.C. § 1355. Specifically, § 1355(b)(1) confers both jurisdiction and venue in civil forfeiture cases. United States v. Contents of Account Number 2033301, 831 F. Supp. 337

(S.D.N.Y. 1993); see also United States v. Contents of Account No. 2033301 in the Name of Freixas, 831 F. Supp. 337, 339 (S.D.N.Y. 1993) ("Under the combined (b) and (d) amendments, a civil forfeiture action now may be brought in the district where the underlying criminal activity occurred.").

In addition to the requirements of subject matter jurisdiction and venue, a court "must have actual or constructive control of the res when an in rem forfeiture suit is initiated." Republic Nat'l Bank of Miami v. United States, 505 U.S. 80 (1992). This requirement is satisfied by § 1355(d), which empowers a court to "issue service of process to obtain physical control over the property—regardless of the district where the property is located—in order to exercise its in rem jurisdiction." Freixas, 831 F. Supp. at 340; see also United States v. All Funds on Deposit in Any Accounts Maintained in the Names of Meza or De Castro, 63 F.3d 148, 152 (2d Cir. 1995) ("This national service of process provision clearly confer[s] in rem jurisdiction on district courts in forfeiture proceedings with respect to property located within another judicial district.").

Here, the Government alleges that defendant currency is traceable at least in part to a multi-jurisdiction narcotics and money laundering conspiracy. Therefore, the Government could have proceeded against the defendant currency in any of the jurisdictions where actions in furtherance of the conspiracy allegedly took place. The complaint alleges that Armstrong, Doe, Jones, AK Distributing, and Elite Distributing are all part of this conspiracy. Specifically, it alleges that Armstrong agreed to ship synthetic drugs to Doe in this district on at least two separate occasions. Compl. ¶¶ 14-15, 17-20. It also alleges that Doe and Armstrong agreed to a sale of synthetic drugs and that Doe then executed a wire transfer of money originating from this district. Id. ¶ 18.

While claimant correctly notes that many of the allegations in the complaint did not occur in the Northern District of New York, it is mistaken to argue that these allegations are directed at satisfying the Government's jurisdictional obligations. Rather, these assertions are directed at the additional pleading requirements associated with in rem civil forfeiture actions in the Supplemental Rules, which requires a complaint to include "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). Assumed true for purposes of this motion, these additional allegations provide support for the Government's claim that the defendant currency is part of a multi-jurisdiction conspiracy to sell and distribute narcotics and to launder the money associated with that activity.

Elite Distributing devotes a great deal of space in its motion papers to arguments concerning its lack of contacts or other involvement in the Northern District of New York. Insofar as claimant seeks to ignore 28 U.S.C. § 1335(d)'s grant of constructive control over the defendant currency and argue the seizure was somehow improperly effected at Bank of America's Utica, New York, branch, it is unrelated to the propriety of the civil forfeiture action at issue here. "A complaint for forfeiture and the warrant of arrest for the seizure of the subject property bear no cause and effect relationship." United States v. 18900 S.W. 50th St., Ft. Lauderdale, Fla., 915 F. Supp. 1199, 1202 (N.D. Fla. 1994); see also United States v. Daccarett, 6 F.3d 37, 46 (2d Cir. 1993) (noting that "seizure and forfeiture are two distinct events").

Because the overt acts between Doe and Armstrong involving this district were taken in furtherance of the conspiracy, the Government has successfully alleged that "any of the acts or omissions giving rise to the forfeiture action" occurred here. 28

U.S.C. § 1355(b)(1)(A). When this connection is considered in light of the additional factual allegations in the Government's complaint regarding Armstrong's involvement in allegedly unlawful transactions with Elite Distributing as part of the larger conspiracy, the complaint satisfies the requisite jurisdictional hooks. Accordingly, Elite Distributing's motion to dismiss will be denied.

## IV. CONCLUSION

Although the Government will have to show a great deal more to ultimately prevail on its forfeiture action against defendant currency, the complaint's allegations are sufficient to defeat Elite Distributing's motion to dismiss.

Therefore, it is

ORDERED that

Claimant Elite Distributing L.L.C.'s motion to dismiss for lack of jurisdiction is DENIED.

IT IS SO ORDERED.

United States District Judge

Dated: March 5, 2014.
Utica, New York.